BRADBURY *versus* ANDREWS, AND LACONIA CO., TRUSTEE.

The common law principle, that the income from [the labor of the wife enures to the benefit of her husband, has not been impaired by the laws of this State.

The wife's earnings are liable to be reached by the process of foreign attachment, in a suit by a creditor of her husband.

What effect c. 85, of Acts of 1854, may have upon a disclosure, involving the income of the wife's labor, made *before,* but pending in Court at the *time* of the passage of the said Act; *queritur.*

In a cause to be heard on exceptions, a motion made and filed at the hearing, as to the amount of the judgment for costs, is irregular and cannot be determined.

ON EXCEPTIONS from *Nisi Prius,* WELLS, J. presiding.

ASSUMPSIT, originally brought before a justice of the peace.

The plaintiff's writ was dated Jan. 27, 1853, service made thereon on the defendant, and the Laconia Company summoned as his trustee on Jan. 31, 1853. The defendant was defaulted. The supposed trustee disclosed that there was due to Mary E. Andrews on the first day of February, 1853, $13,68, for her personal services in one of the mills of the company, performed from the 27th day of December, 1852, to the 29th day of January, 1853, inclusive, with the exception of Sundays, and that on said Feb. 1, they paid her that sum.

The clerk further disclosed, that the defendant was entirely unknown to him, and that he did not know that Mary was the wife of defendant, except, that her overseer informed him she was a married woman, and that in speaking of her husband she usually spoke of him " as George."

It was proved that Mary was the defendant's wife, while the above services were rendered; and on the copy of the writ delivered the trustee, was indorsed this notice : — " To the trustee. — Plaintiff claims to hold the wages of defendant's wife."

The justice charged the company as trustee, from which judgment they appealed, and the Judge presiding in the ap-

Bradbury *v.* Andrews.

pellate Court, affirmed the decision of the justice; to which ruling exceptions were filed and allowed.

When the cause came on for argument in the District Court, the counsel for the plaintiff filed the following motion:—"In this action the plaintiff moves that judgment be rendered against the trustee for all costs arising after the appeal from the decision of the magistrate, and that execution issue against the goods and estate of said Trustee to satisfy the same."

*Goodwin,* for trustee.

1. The money for the personal services of Mary E. Andrews, was her property, exempt from attachment for the debts of her husband, and therefore the company ought not to be charged as trustee. Acts of 1844, c. 117; of 1847, c. 27; 1848, c. 73, and 1852, c. 227.

2. These statutes were designed to give married women the power to acquire property in the same manner as when unmarried, and to exempt all property acquired by them from attachment for their husband's debts, saving the exceptions made therein. The language employed is intended to express all the different modes of acquiring property. *Wages* due is a credit, and in the ordinary acceptation of the term, is property.

3. Though it may be true that the husband has the right to the services of his wife, that is, if he chooses, he may require her to labor for him in her proper sphere, and if she unreasonably refuses, he may be relieved by divorce from his obligation to support her; yet he cannot oblige her to labor for him as he pleases, or out of her domestic sphere, to which her duties under the marriage contract are confined. And when she is compelled by her wants, or her chidren's, to submit to the exhausting labors of a factory, neither the husband nor his creditors can rob her of her earnings. In this case she did not labor for her husband. He did not claim her wages. No contract was made with him, nor was he known to the company.

4. But the company up to the time of payment to Mary

E. Andrews, had no notice that she was the wife of the defendant, and therefore properly paid the money to her as the only one known to them as entitled to receive it, and on this ground should be discharged.

*Wilkinson* and *Tapley*, for plaintiff.

1. What were the rights of the husband in relation to the personal services of the wife prior to the passage of the statutes cited on the other side? They were determined only by the common law, and under that he was entitled to the services and earnings of the wife. *Commonwealth* v. *Manley*, 12 Pick. 173; *Ames* v. *Chew*, 5 Metc. 320; *Keith* v. *Woombell*, 8 Pick. 211.

2. Have the statutes cited changed the common law in this matter? They are to be construed strictly. This rule is supported by numerous authorities. The statute of 1844 was accompanied with this proviso, " that the same does not in any way come from the husband after coverture." This proviso is retained in the subsequent amendments to that law. If the services of the wife belong to the husband, their proceeds do likewise.

3. But the effect to be given to the term " purchase" used in the statute cited by the trustee, has already been considered by the Court in *How* v. *Wildes*, 34 Maine, 566, and overrules the construction contended for by the other side. Vid. also *Swift* v. *Luce*, 27 Maine, 285.

4. No notice in this case was necessary to be given. It was the duty of the company to pay to such person as was authorized by law to receive it. But if a notice was necessary, then it was given, and in writing, to the proper person. For aught appears, the overseer knew all about the marriage.

*Goodwin*, in reply.—

The proviso in question is not applicable to this case. It relates entirely to different transactions from that which is the subject of this investigation.

Personal labor of the wife is not money or property of the husband in any correct sense of the words.

The statute expressly gives a married woman power to sell property; does not this include the power to purchase?

The case in 34 Maine, 566, was decided before the amendment of 1852 was enacted. But even as the law then stood, it might respectfully be submitted, that that decision may admit of revision and limitation.

It is not easy to discover from that decision, what meaning the Court would give to the word "purchase" used in the statutes of 1844 and 1847. The passage of the Act, 1852, would seem to indicate the limits contemplated by the Legislature as soon as this decision was made known.

The statute may well authorize and make valid an executed contract, and not an executory one. It may protect so much of a contract as is *executed*, and yet furnish no means to compel an execution of such parts as are executory only. I know of no reason why a conveyance of land or other property, purchased by a married woman, by a contract understandingly made by both parties, may not be valid under the statutes, where the vender has consented to take the promissory note of the purchaser, although that note as an executory contract has no validity in law, or although the law furnishes no means of enforcing it.

At common law, such a conveyance would be good for the purpose of passing the estate.

The notice on the writ was clearly insufficient; it did not even mention the wife's name. Whatever knowledge the overseer had, does not appear to have been communicated in any way to the corporation.

CUTTING, J. — The supposed trustees, by their agent, disclosed that when the trustee process was served on them, they were indebted to one Mary E. Andrews, for her personal labor, in the sum of $13,68.

The facts, further disclosed and proved, show that she was, during the time she labored, the wife of the principal defendant, and that the company, through their agents, had such knowledge or the means of such knowledge, when payment was made to her.

At common law, the income from the labor of the wife, inures to the benefit of the husband, and none of the recent statutes of this State, referred to in the arguments, have changed the law in that particular; consequently the payment to the wife, after the service, was unauthorized.

Since the disclosure, and the adjudication thereon at *Nisi Prius*, the Legislature by the Act of April 15, 1854, have enlarged the statute, c. 119, § 63, so as to embrace the personal labor of the wife and minor children. But there being more than one month's labor due, it becomes unnecessary to consider the effect of that Act upon this case at the present time; at all events the company are chargeable as trustees for some amount, and the exceptions are overruled.

The plaintiff's motion is not properly before us; it constitutes no part of the exceptions.

SHEPLEY, C. J., and HOWARD, RICE and HATHAWAY, J. J., concurred.